IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| KENNEDI MARTINEZ,<br><br>**Petitioner**<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>**Respondent** | **CIVIL NO.** 09-1998 (JAG)<br>**CRIMINAL NO.** 04-405 (JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D. J.

Pending before the Court is a Motion requesting habeas corpus relief under 28 U.S.C. § 2255. The motion was filed by Petitioner Kennedi Martinez ("Petitioner"). (Docket No. 1). For the reasons set forth below, the Court **DENIES** Petitioner's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

In the case at bar, Petitioner Kennedi Martinez ("Petitioner") was convicted and sentenced for attempting to smuggle illegal aliens for personal gain, from the Dominican Republic into the United States on an unseaworthy vessel destined for Puerto Rico, in violation of 8 U.S.C. § 1324. (Criminal No. 04-405 (JAG), Docket No. 338). Petitioner's conviction and sentence were upheld by the First Circuit Court of Appeals. United States v. Hilario-Hilario, 529 F.3d 65, 78 (1st Cir. 2008).

On September 30, 2009, Petitioner, pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence under § 2255, asserting that

Civil No. 09-1998 (JAG)                                            2

ineffective assistance of counsel violated his Sixth Amendment and Due Process rights. His habeas petition (Docket No. 1) and supporting Memorandum (Docket No. 19) set forth ten ways in which his trial attorney ("Counsel") was allegedly remiss:

A.  Counsel failed to file a meritorious motion for violation of the Speedy Trial Act.

B.  Counsel failed to plan any defense.

C.  Counsel failed to move for a change of venue, despite high levels of publicity surrounding the controversy.

D.  Counsel failed to move to sequester the jury, to insulate them from the publicity surrounding the case.

E.  Counsel failed to allow Petitioner to testify at trial, despite Petitioner's request to do so.

F.  Counsel failed to hire an investigator for the case, and because he interviewed witnesses himself, was unable to challenge witnesses who strayed from their previous statements at trial.

G.  Counsel failed to obtain evidence of "bribes" which the government gave its witnesses.

H.  Counsel failed to move to strike Petitioner's co-defendants' confession.

I.  Counsel failed to demonstrate that a knife involved in the controversy did not qualify as a weapon.

J.  Counsel failed on appeal to challenge a "special skill"

Civil No. 09-1998 (JAG)                                            3

sentencing enhancement.[1]

    The United States ("the Government") confines its argument in opposition to this Motion entirely to the issue of timeliness, though the Government preserves a perfunctory opposition to Petitioner's actual claims as well. (Docket No. 9).

    On February 9, 2010, this Motion was referred to Magistrate Judge Marcos E. Lopez, who issued a Report and Recommendation on April 6, 2010 finding Petitioner's Motion untimely. (Docket No. 22). Petitioner objected to this Report and Recommendation on April 20, 2010. (Docket No. 23).

    As an additional matter, Petitioner wrote on April 8, 2008 to his former counsel to request dozens of specific documents, (Docket No. 19 Ex. 3), and followed up a month later with a threatening letter informing him that "ABA standards dictate that [he is] entitled to a copy of the entire file." Id. Counsel wrote back on May 19, 2008, resigning as Petitioner's attorney, and making a box of documents available for one of Petitioner's relatives to pick up. Id. Petitioner sent an indecorous reply, refusing to have a relative pick up the entire box, and instead demanding that his

---

[1] Petitioner's eleventh theory in his petition is that Counsel failed to object that his sentence "was increased based on facts not found by a jury, nor admitted by a defendant[.]" The factual basis for this is unclear, and this argument is abandoned in Petitioner's Memorandum explaining the rest of his claims. (Docket No. 1).

Civil No. 09-1998 (JAG)                                                4

former attorney cull the individual requested documents together and send them to him.  Petitioner requests, if the Court does not grant his habeas petition, that the Court order this attorney to deliver the individual requested files to Petitioner.

## STANDARD FOR REVIEWING A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pursuant to Title 28, United States Code, Section 636(b)(1)(B); Fed. R. Civ. P. 72(b); and Local Rule 72; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See Alamo Rodriguez v. Pfizer Pharm., Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The adversely affected party may object to the Magistrate's recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).  If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." Rivera de Leon v. Maxon Eng'g Servs., 283 F. Supp. 2d 550, 555 (D.P.R. 2003).  The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objections, "the district court can assume that they have agreed to the magistrate's recommendation." Alamo Rodriguez, 286 F. Supp. 2d

Civil No. 09-1998 (JAG)                                              5

at 146 (citing Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir.1985)).

On April 6, 2010, Magistrate Judge Marcos E. Lopez issued a Report and Recommendation which found that Petitioner's Motion was not timely filed. (Docket No. 22). Petitioner contested this finding on April 20, 2010. (Docket No. 23).

## TIMELINESS OF HABEAS FILING

A prisoner has one year to file a motion under § 2255 calculated from the latest of several possible occurrences, including "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).[2]

A judgment of conviction becomes final after it has been rendered, the appeals process is exhausted, and the time to file a petition for certiorari expires, or a petition for certiorari which had been timely filed is finally denied. Griffith v. Kentucky, 479 US 314, 321 n.6 (1987).

---

[2] The other events, not applicable in the present case, are:
"(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. 2255(f)(2-4).

Civil No. 09-1998 (JAG)                                                    6

The First Circuit Court of Appeals affirmed Petitioner's judgment of conviction on June 20, 2008 (Criminal No. 04-405 (JAG), Docket No. 567). Thus, his judgment of conviction became final on September 18, 2008, when the ninety day period allowed under Supreme Court Rule 13(1) to file for a writ of certiorari elapsed without Petitioner filing such writ. Sup. Ct. R. 13. This gave Petitioner until September 18, 2009 to file his habeas petition.

Prisoners are dependent on both prison staff and the postal service for the delivery of legal mail, which creates uncertainties about timely filings because a prisoner cannot always prove that a delay was due to no fault of his own. Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). To minimize such uncertainties, to create parity between pro se prisoner litigants and other litigants, and to hold such litigants responsible only for that which is in their actual control, the "prisoner mailbox rule" requires only that a prisoner deposit his legal mail, including petitions under § 2255, in the prison's internal mail system on time. Id. In the present case, the Government requests that Petitioner's motion be found untimely because it was not in the hands of prison officials to be mailed until September 21, 2009. (Docket No. 9). When the petition was delivered and postmarked, however, is not the legally appropriate filing deadline.

Petitioner makes clear from his Memorandum (Docket No. 19) and

Civil No. 09-1998 (JAG)                                              7

his Objection to the Magistrate's Report and Recommendation (Docket No. 23) that the prison's internal mail system is not a one-step process.  The Government would have us brand Petitioner's Motion late based on the timing of the final step where prison officials process the mail they have collected from the mailbox to send as outgoing mail.  The appropriate time marker for statute of limitations purposes, however, is the first step in the process, the placement of the mail into the prison's mail drop-box, which is consequently the last step available to a prisoner.

Petitioner avers that on Friday, September 18, 2009, the prison mailroom was not open to inmates, and so he placed his mail into a drop-box instead.  (Docket No. 23).  According to Petitioner, Bureau of Prisons mailroom staff would not collect mail from the drop-box next until Sunday night, and it would then be processed on Monday morning.  The Government submits a post office document showing a timestamp of 9:07am, Monday, September 21, 2010 in an attempt to show that Petitioner brought his mail to prison authorities then.  (Docket No. 9 Ex. 2).  This document, however, fails to contradict Petitioner's assertion that this reflects the last step whereby the prison staff processes mail previously collected to then send out. Additionally, Petitioner contends that the mailroom isn't even open to prisoners on Mondays.  (Docket No. 23).  The intermediary steps were beyond the control of Petitioner, specifically the steps when prison staff collected mail from the

Civil No. 09-1998 (JAG)                                            8

drop-box, and subsequently processed that mail to send out. As such, the Court will recognize the Motion as filed on the day it was placed in the prison drop-box, September 18, 2009, and thus will consider it as timely filed.

## STANDARD UNDER SECTION 2255

This Court has jurisdiction to entertain a § 2255 motion only where the petitioner is currently in custody under the sentence of a federal court. 28 U.S.C. § 2255. A motion under § 2255 must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255. Should a court find any of these errors, it "shall vacate and set the judgment aside and shall discharge the prisoner or re-sentence him or grant a new trial or correct the sentence as may appear appropriate." Id.  Claims which do not allege constitutional or jurisdictional errors may be brought under § 2255 only if the claimed error would result in a complete miscarriage of justice. See Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (citing Hill v. United States, 368 U.S. 424, 428 (1962)).

Petitioner frames his grievance within the first of these elements, alleging ineffective assistance of counsel in violation

Civil No. 09-1998 (JAG)                                                9

of his Sixth Amendment rights under the United States Constitution.

While the Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, " '[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of a reasonably effective assistance under the circumstances." Lema v. United States, 987 F.2d at 51 (citing United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991)).  To establish a Sixth Amendment violation, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for the error or errors, the outcome would likely have been different.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  However, such a petition may be summarily denied where it contains mere bald assertions without specific factual allegations. Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992).  In addition, even a facially adequate petition may be denied without a hearing where the alleged facts are conclusively refuted by the files and records of the case.  Id.  Accord Lema, 987 F.2d at 51-52.

Claim A: Failure to file a Speedy Trial Act Violation Motion

The Speedy Trial Act ("Act") demands that a trial commence "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has

Civil No. 09-1998 (JAG)                                              10

appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c). The Act then sets forth occurrences which act to exclude time from counting toward those seventy days, including (but not limited to) delays resulting from pretrial motions (from the date they are filed until they are promptly disposed of), and delays attributable to proceedings under the advisement of the court concerning the defendant (but not in excess of thirty days). 18 U.S.C. § 3161(h)(1).

Petitioner's contention is that Counsel acted unreasonably by failing to file a motion claiming a violation of the Act. Petitioner does not attempt to calculate how many days were excludable, or how many days in excess of the statutory maximum his case ran before trial. Petitioner's strategy is to attack the Court's reasoning for granting continuances, and then to provide a short, non-exhaustive list of docket entries which Petitioner claims are insupportable.

Petitioner never specifies when during that time Counsel should have declared a violation of the Act, which is relevant because all time subsequent to such a motion is not counted for purposes of disposing of the motion. United States v. Connor, 926 F.2d 81, 84 (1st Cir. 1991) (Under the Speedy Trial Act, "a motion for dismissal is effective only for periods of time which antedate the filing of the motion. Subsequent periods of delay, whether

Civil No. 09-1998 (JAG)                                                11

includable or excludable, are inconsequential."). Knowing when Petitioner believes Counsel should have acted would help to weigh the possible reasonableness of Counsel's inaction.

Furthermore, there is a possibility that the criminal complaint will be dismissed without prejudice, such that the accused could be re-indicted in the future.[3] 18 U.S.C. 3136(a)(2); See also Zedner v. United States, 547 U.S. 489, 499 (2006). While this fact is not relevant to the likelihood that a Speedy Trial Act violation will be found if a meritorious motion is timely filed, it is relevant to the utility that an attorney may or may not perceive in filing such a motion. Petitioner has done nothing to refute the tactical decision-making of Counsel in not filing under the Act, aside from setting forth the assumption that every reasonable attorney would have filed as a matter of course. Faced with a "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy,'" Strickland, 466 U.S. at 687, (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)), Petitioner has failed to fulfill the first prong of Strickland by showing that Counsel's lack of filing fell below an "objective standard of reasonableness." Strickland, 466 U.S. at 687. This

---

[3] "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. 3136(a)(2).

Civil No. 09-1998 (JAG)                                              12

might have been done by alleging, through specific facts, how Counsel objectively should have perceived that there was a real chance of dismissal with prejudice if Counsel had acted at a certain time, or that Petitioner's chance of success at a subsequent trial would have been better.  Petitioner has not alleged anything of the sort.

Claim B: Counsel Planned No Defense

A claim of ineffective assistance of counsel must include "specific factual allegations."  Barrett, 965 F.3d at 1186.  The claim that Petitioner's Counsel put on what amounts to no defense is entirely unsupported by factual allegations.  This theory is easily discarded as insufficiently pled, as Petitioner does no more than recite legal standards from several circuits, without bothering to connect this accusation to facts from the case.

Claims C and D: Failure to Move for Change of Venue or Sequestration of Jury

Petitioner claims that the trial proceedings were engulfed in a "media frenzy," and that his attorney failed to move for a change of venue, or to move for sequestration of the jury, resulting in a jury that was prejudiced in violation of his Sixth Amendment rights.  However, "pretrial publicity, even pervasive, adverse publicity, does not inevitably lead to an unfair trial."  Nebraska

Civil No. 09-1998 (JAG)                                          13

Press Ass'n v. Stuart, 427 U.S. 539, 554 (1976).

The Sixth Amendment is violated by publicity surrounding a trial if at least one of three criteria are met.  First, the trial must have transpired in a "circus atmosphere," which destroys the solemnity and sobriety a defendant is due during the trial process. Murphy v. Florida, 421 U.S. 794, 799 (1975); United States v. Moreno Morales, 815 F.2d 725, 731-32 (1st Cir. 1987).  Second, the jurors themselves must have fixed opinions which they cannot set aside, disabling them from rendering an impartial verdict predicated solely on the information presented at trial.  Irvin v. Dowd, 366 U.S. 717, 722-23 (1961); Moreno Morales, 815 F.2d at 732; See also Skilling v. United States, 130 S.Ct. 2896, 2902 (2010) ("[P]rominence does not necessarily produce prejudice, and juror impartiality does not require ignorance.  A presumption of prejudice attends only the extreme case.") (citations omitted). Third, the community must have become so saturated with hostile publicity that even jurors who profess impartiality may be presumed to have been unconsciously affected by the pervasive community sentiment.  Moreno Morales, 815 F.2d at 734-35.

Petitioner holds that there was no juror who had not heard of this case.  Simply hearing about a case does not unconstitutionally prejudice a juror; there must be an impairment to impartiality. The First Circuit Court of Appeals acknowledged that the trial judge conducted a thorough and searching voir dire, including

Civil No. 09-1998 (JAG)                                              14

questions regarding whether jurors had learned about the case from the media. Hilario-Hilario, 529 F.3d at 72. Petitioner does not present information that suggests the community was pervasively affected by negative media other than the conclusory statement that the "media frenzy" was "inflammatory," and therefore it was "impossible to obtain an impartial jury." (Docket No. 19). This alone does not establish a circus-like environment, fixed opinions in the minds of the actual jurors, or a pervasively hostile community. Because Petitioner has failed to show that the level of publicity threatened his Sixth Amendment rights, it can hardly be said that Counsel failed to act reasonably, as Strickland's first prong requires, by not moving for a change of venue or moving to sequester the jury from non-prejudicial media exposure.

Claim E: Failure to Allow Petitioner to Testify at Trial

Petitioner asserts that he had requested to testify, but Counsel would not allow it. Such an assertion, standing alone, will not entitle a petitioner to a hearing on his habeas corpus petition. Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991) (a "barebones assertion" that a defendant's attorney would not let him testify is "too facile a tactic to be allowed to succeed" without greater particularity) (citing Siciliano v. Vose, 834 F.2d 29, 30-31 (1st Cir. 1987)).

Petitioner's assertion, even taken as true, is insufficient to

Civil No. 09-1998 (JAG)                                        15

prove that his counsel's decision not to have him testify was not "within the broad norms of professional competence."  Owens v. United States, 483 F.3d 48, 58 (1st Cir. 2007).  Petitioner has not adorned his allegation with any suggestion of what his testimony would have been, and this Court is unable to say that the exclusion of that testimony is prejudicial under the second prong of Strickland.  See Owens, 483 F.3d at 59-60 (highlighting the importance of exculpatory testimony a defendant was prevented from offering in his own defense while acknowledging a more difficult showing of prejudice where defendant was prevented from offering testimony that would not have furthered his own defense).

Claim F: Failure to Hire an Investigator to Interview Witnesses

Petitioner holds that Counsel was incompetent for interviewing witnesses before trial without the aid of an investigator.  This apparently disabled Counsel from "scor[ing] any points with the jury," as he was unable to point out inconsistencies in witness testimony because he himself was the only witness to their previous statements.  (Docket No. 19).  Even if this alone were enough to survive the first prong of Strickland, Petitioner alleges nothing to survive the second prong, which requires that "but for the error or errors, the outcome would likely have been different." Strickland, 466 U.S. at 687.

Claim G: Evidence of Bribes

Petitioner asserts that the Government granted witnesses asylum and sped up the work permit process, amounting to a form of "financial compensation." (Docket No. 19). While it may have behooved Counsel to make this arrangement known to the jury, the attorney may have made a tactical decision not to. "To avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable." United States v. McGill, 11 F.3d 223, 227 (1st Cir. 1993). The authority cited by Petitioner, United States v. Pomales-Lebron, 513 F.3d 262, 268 (1st Cir. 2008), suggests that the credibility of paid testimony is up to the jury. Petitioner unconvincingly and cursorily determines that granting asylum is equal to paying witnesses, and has averred nothing to suggest that this information would have affected the jury's determination of the witnesses' credibility or that the result of the trial would have been any different, failing under Strickland's second prong.

Claim H: Failure to Move to Strike Co-Defendant's Testimony

The Confrontation Clause of the Sixth Amendment is violated when a "codefendant's statement expressly implicates the defendant, leaving no doubt that the statement would prove powerfully incriminating." United States v. Sotomayor-Vazquez, 249 F.3d 1, 11 (1st Cir. 2001) (internal punctuation omitted) (citing Bruton v.

United States, 391 U.S. 123 (1968)).  Petitioner asserts that his co-defendant's confession was admitted at trial, "remov[ing] all doubt about guilt in the jury's mind."  (Docket No. 19). Petitioner's assertion here is missing crucial information about this "confession" regarding what the statement contained, relevant to determining how prejudicial the statement was and the extent to which it did or did not implicate Petitioner directly.  At trial, this Court determined that the confession could easily be redacted so as to avoid causing any prejudice to Petitioner.  United States v. Hilario-Hilario, 376 F. Supp. 2d 141, 146 (D.P.R. 2005).  In the absence of specifically pled facts that suggest that this was not accomplished, this avenue of establishing ineffective assistance of counsel is foreclosed.  Petitioner has not shown Counsel to have acted unreasonably under Strickland's first prong in relying on such redaction.

Claim I: Failure at Sentencing to Properly Characterize a Knife

Petitioner's contention here is that Counsel should have procured a small kitchen knife to demonstrate at trial that the knife which Petitioner was alleged to have been carrying was neither a machete nor intended to be used as a weapon.  A machete, Petitioner asserts, was wielded by someone else, and should not have been imputed to him.  Petitioner points to no legal authority that suggests that the Sixth Amendment protects Petitioner's

Civil No. 09-1998 (JAG)                                              18

backward-looking attempt at micromanaging, and the Court is not compelled to do so on its own.

Claim J: Failure to Object to "Special Skill" Enhancement on Appeal

Petitioner claims that the failure to raise an objection to a three-point enhancement for having a "special skill" (operating a GPS or similar device) may call for a re-sentencing, as evinced by the re-sentencing granted co-defendants who did raise the issue on appeal. Petitioner relies primarily on hindsight for this proposition, as his argument focuses on the successful appeal strategies of co-defendants. Rather than guaranteeing a flawless defense, the Sixth Amendment entitles Petitioner only to "reasonably effective assistance under the circumstances." Lema, 987 F.2d at 51. "The performance standard is to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." Natanel, 938 F.2d at 309. Petitioner's bare assertion about what his counsel should have done in retrospect does not satisfy Strickland's first prong, which requires that counsel's actions fall below an "objective standard of reasonableness." Strickland, 466 U.S. at 687. In fact, the First Circuit Court of Appeals thought it wise that Petitioner did not object to this enhancement, as he was the one among the co-defendants who was actually observed using the navigation device. Hilario-Hilario, 529 F.3d at 78. The

Civil No. 09-1998 (JAG)                                             19

Court of Appeals reasoned that, unlike Petitioner's behavior, steering a boat without the aid of technological navigational devices did not qualify for the special skill enhancement.  Id.

Claim for Documents from Former Attorney

    After a series of insulting letters to Counsel, Petitioner finds himself without copies of documents he believes would have helped his case, and seeks for the Court to order his former attorney to send him a series of documents he had previously specifically requested.  The record shows that Counsel had made the entire record available to him, which Petitioner rejected after again vituperating his attorney.  It is not immediately clear how the documents are of actual use to Petitioner, since he has exhausted the appeals process and filed this habeas petition on the very last day available to him to do so, but the element the Court finds dispositive in refusing to enter such an order is the fact that counsel has already made these documents available.

## CONCLUSION

    For the reasons stated above, the Court hereby **REJECTS** the Magistrate Judge's Report and Recommendation, (Docket No. 22), and **DENIES** Petitioner's habeas motion, (Docket No. 1).

Civil No. 09-1998 (JAG)                                                  20

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 6th day of August, 2010.

                                            <u>s/ Jay A. Garcia-Gregory</u>
                                            JAY A. GARCIA-GREGORY
                                            United States District Judge